# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **AMANDA J. ECKL, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | Civil Action Number |
| ) | **3:17-cv-00051-AKK** |
| v. ) | |
| ) | consolidated with |
| **LAUDERDALE COUNTY BOARD** ) | |
| **OF EDUCATION, et al.,** ) | **3:17-cv-01232-AKK** |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Amanda J. Eckl, Jessica L. VanDerVelde, and Angela C. West bring these employment actions against the Lauderdale County Board of Education (the "Board"), former Superintendent Jennifer Gray, and current Superintendent Jonathan Hatton, pursuant to the Equal Pay Act, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The plaintiffs assert that the defendants violated the Equal Pay Act and Title VII by paying them significantly less than a male colleague for allegedly substantially similar work and by retaliating against them after they complained of the pay disparity. Doc. 1; Doc. 3 (Case No. 3:17-cv-1232-AKK).[1] Presently before the court are the defendants' motion for summary judgment, doc. 33, and the plaintiffs' motion to

---

[1] Unless otherwise indicated, the court cites to the CM/ECF document numbers assigned in Case No. 3:17-cv-00051-AKK.

strike, doc. 36. For the reasons explained below, the motion to strike is due to be denied, and the motion for summary judgment is due to be granted solely as to the Equal Pay Act claims based on the pay disparity. In all other respects, the motion is due to be denied.

I.  **STANDARD OF REVIEW**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of informing the court of the basis of the motion and proving the absence of a genuine dispute of material fact. *Id.* at 323. If the moving party meets that burden, the burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs work in the Board's bookkeeping department, which is responsible for handling the Board's business and finances. Docs. 37-7 at 3; 37-5 at 6. Larry Vance, the Chief School Finance Officer, supervised the department's four employees during the relevant time. Docs. 37-2 at 3, 8; 37-5 at 3. Mark Collier worked in the department from June 1993 until he retired in October 2016, earning at his retirement an annual salary that exceeded the plaintiffs' by at least $23,000. *See* docs. 34-1 at 1; 37-12 at 6-7, 12-13, 19-20, 26-27.

When the Board hired Collier in June 1993, it initially advertised for a bookkeeper-payroll position, which required an associate's degree in accounting or business. *See* docs. 34-2 at 12; 37-3 at 2. But, the Board ultimately hired Collier,

3

who has a bachelor's degree in accounting, for a payroll accountant/computer operator position, which required a bachelor's degree in accounting. Docs. 34-2 at 1, 12; 37-2 at 3. The pay scale for Collier's position at the time ranged from $27,274 for step zero to $32,074 for step ten, and Collier began at step zero. Docs. 34-2 at 12; 37-3 at 4. Early in his career, Collier also "performed duties regarding computer technology." Doc. 34-1 at 1. These responsibilities ended when the Board began employing dedicated IT personnel sometime before 1999. *Id.* In spite of the change in duties, Collier kept the same job title. *See* doc. 34-2 at 55. In 2011 or earlier, the Board changed Collier's salary schedule from payroll accountant/computer operator to accounting specialist I, with a pay scale that ranged from $47,783 - $57,660 for a person with a bachelor's degree. *See* docs. 37-11 at 3; 37-12 at 2. Collier earned approximately $55,900 annually when he retired in 2016. Doc. 37-12 at 6-7.

Collier attests that "[i]n addition to [his] regular duties and responsibilities," his duties included the following twenty-four tasks:

1. Preparation of [] LEAPS reports;
2. Salary schedule (until [] Vance was employed [sometime before 1999]);
3. Ethics report;
4. Fixed Asset Inventory report;
5. 941 quarterly tax report;
6. Booking of annual [Board] auction and calculation of the proceeds to the various schools and departments;
7. Retiree consultations;

4

8. Auditing of local school financial accounts and providing technical assistance;
9. Setting up new vendors in the financial system;
10. Preparing the Disposal Report to the State of Alabama;
11. Posting, calculating, and dis[bu]rsing annual employee share of tobacco tax;
12. Ordered and inventoried office supplies;
13. Completed worksite report to Department of Labor;
14. Completed and disbursed W-2's for system;
15. Uploaded payroll information to Social Security;
16. Performed calendar year-end procedures;
17. Performed fiscal year-end procedures;
18. Submitted transcripts to the State department for employees to be approved for higher degree;
19. Checked local school accounts for items purchased that should be entered in the system's inventory;
20. Entered and balanced coaching supplement per approved list;
21. Entered and balanced service recognition pay for those eligible;
22. Maintained and balanced garnishment s submitted by various agencies;
23. Entered and balanced AirEvac enrollments;
24. Entered and balanced UNA tuition management program for certified personnel.

Doc. 34-1 at 1-2. Collier contends that he alone performed those tasks without any assistance from the plaintiffs. *Id.* at 1-2.

The Board hired Eckl, who has a bachelor's degree in accounting, in June 1999 as an accounts payable clerk, a position that required a two-year associate's degree and that had an advertised salary range from $21,028 - $25,106. Docs. 34-2 at 3, 34; 37-5 at 2-3; 37-6 at 2. Eckl's job duties included "maintaining accounts payable records, including cash disbursements records, purchase orders, and adding/maintaining vendor files," and she also "recorded, monitored, and reported

5

the acquisition, maintenance, and disposition of equipment and other general fixed assets," "journalize[d] daily receipts into the account records," and "reconcil[ed] bank statements to accounting records." Doc. 37-5 at 3. Eckl's taxable salary was approximately $30,600 in 2016. Doc. 37-12 at 13.

In September 2006, the Board hired VanDerVelde and West as accounting clerks. Docs. 34-2 at 61; 34-6 at 1, 3-4; 37-7 at 3; 37-9 at 3. Both VanDerVelde and West have bachelor's degrees in a business-related filed, but the positions they filled required a two-year associate's degree and had an advertised salary range of $25,071 - $29,933. Docs. 34-2 at 61; 34-6 at 1; 37-7 at 3; 37-9 at 2-3. VanDerVelde worked as an insurance benefits specialist, and her primary job function involved handling all benefits-related issues for the Board's employees. Docs. 37-2 at 3; 37-7 at 4; 34-4 at 3. VanDerVelde also helped with the following tasks: preparing ethics reports; bookkeeping for the Board's annual auction; conducting retiree consultations; setting up new vendors; posting, calculating, and dispersing annual employee share of the tobacco tax; calculating and reporting the Affordable Care Act information for W-2 forms for the school system; performing year-end procedures; and entering and balancing service recognition pay for eligible employees. Doc. 37-7 at 5-6. VanDerVelde's taxable salary was approximately $32,600 in 2016. Doc. 37-12 at 16.

West worked as a payroll clerk and had primary responsibility for payroll and payroll-related tasks. Docs. 34-2 at 61; 34-4 at 3; 37-2 at 3; 37-9 at 4. West also performed the following duties: preparing ethics reports; preparing the 941 quarterly tax reporting; bookkeeping for the Board's annual auction; conducting retiree consultations; setting up new vendors; posting, calculating, and dispersing annual employee share of the tobacco tax; completing worksite reports for the Department of Labor; completing and disbursing W-2 forms for the Board; uploading payroll information to Social Security; performing calendar and fiscal year-end procedures; entering and balancing coaching supplements; entering and balancing service recognition for eligible employees; maintaining and balancing garnishments; entering and balancing AirEvac insurance enrollments; and entering and balancing UNA tuition management for certified personnel. Doc. 37-9 at 4-5. West's taxable salary in 2016 was approximately $31,400. Doc. 37-12 at 27.

The Board did not fill Collier's position after he retired. Doc. 34-2 at 55. Instead, it redistributed Collier's job duties to the plaintiffs, who did not require any additional training or education to take on those duties. Docs. 34-4 at 4; 37-5 at 5; 37-7 at 7. Based on the redistribution of job duties, the Board created three new positions to correspond with each of the plaintiffs' jobs: account specialist for Eckl, benefits specialist for VanDerVelde, and payroll specialist for West. Docs. 34-2 at 4; 34-4 at 4; 37-5 at 4-5; 37-7 at 7. The Board created pay scales for the

7

plaintiffs' new positions to reflect that the positions require a bachelor's degree. Docs. 37-5 at 5; 37-11 at 11-13. In 2016-2017, the pay scale for the three new positions ranged from $34,725 to $39,225, which is approximately $18,000 to $22,000 less than the pay scale for a person with a bachelor's degree in Collier's former position. *See* doc. 37-11 at 11. Even though it created the positions for the plaintiffs, the Board posted the three new positions and required the plaintiffs to apply for the positions. Docs. 37-5 at 4-5. As a result of the change in job title and pay scale, the plaintiffs each received a salary increase of $4,500. Doc. 34-2 at 4; 37-5 at 5.

In December 2015, the plaintiffs filed a charge of discrimination with the Equal Employment Opportunity Commission for sex discrimination based on the disparity between their salaries and Collier's. Docs. 37-5 at 4; 1-1 at 2-4. The plaintiffs subsequently filed another charge with the EEOC for retaliation based on the Board's decision to require them to apply for the new positions it created for them and the elimination of the pay scale that applied to Collier's position. Doc. 3-1 (Case No. 3:17-cv-01232-AKK) at 2-7. This lawsuit followed.

## III. ANALYSIS

The plaintiffs assert Title VII claims and Equal Pay Act claims based on alleged wage discrimination, and retaliation claims under Title VII and the Equal Pay Act. Doc. 1 at 13-16; Doc. 3 (Case No. 3:17-cv-01232) at 13-18. Although

8

the defendants' briefs in support of summary judgment contain generic references to the dismissal of all claims, *see* docs. 34 at 1, 17; 44 at 13, the defendants only argue for dismissal of the Equal Pay Act claims based on the disparity between the plaintiffs' pay and Collier's pay. They offer no arguments related to the Title VII claims or the retaliation claims. *See* docs. 34; 44. "Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998). Therefore, to the extent that the defendants intended for their motion to cover the Title VII or retaliation claims, the motion is due to be denied. Thus, the court will only address the Equal Pay Act pay claims, which are the only ones properly before the court.

### A. The Plaintiffs' Motion to Strike

As an initial matter, the plaintiffs ask the court to strike paragraphs 1 – 5, 10 – 18, 20 – 21, and 31 from the defendants' statement of facts. Doc. 36. The plaintiffs contend that the defendants failed to support these facts with a citation to the record and that the paragraphs contain legal conclusions or recitations of the Alabama Code. *Id.* Because the court does not need to rely on paragraphs 1 – 5, 10 – 18, or 31 to decide the motion for summary judgment, the plaintiffs' motion is moot with respect to those paragraphs. As for paragraphs 20 and 21, which contain facts related to Collier's job duties and the date he retired, doc. 34 at 4-6,

9

the plaintiffs correctly point out that the defendants violated the requirements of Appendix II to the court's scheduling order by failing to support those facts with a specific reference to evidentiary submissions. Doc. 36 at 14 (citing Doc. 31 at 9). Even so, because it is clear that the facts stated are copied directly from Collier's affidavit, which the defendants cite elsewhere in their statement of facts, the court declines to strike paragraphs 20 and 21.

### B. The Motion for Summary Judgment

The Equal Pay Act prohibits an employer from paying an employee less than employees of the opposite sex for equal work. 29 U.S.C. § 206(d)(1); *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992). To establish a prima facie case under the Act, a plaintiff "'must show that an employer pays different wages to employees of opposite sexes for equal work on jobs [that] require[] equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Miranda*, 975 F.2d at 1532 (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). The jobs at issue do not have to be identical, only substantially equal. *Id.* at 1533; 29 C.F.R. § 1620.13(a). Even so, "[t]he standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 199 (11th Cir. 1989). *See also Miranda*, 975 F.2d at 1526 ("A plaintiff suing under the Equal Pay Act must meet the fairly strict standard of proving that

10

she performed substantially similar work for less pay."). The determination of whether jobs are substantially equal focuses upon the primary duties of the jobs at issue, "not duties that are incidental or insubstantial . . . ." *Arrington v. Cobb County*, 139 F.3d 865, 876 (11th Cir. 1998). While formal job titles and job descriptions are relevant to the inquiry of whether two jobs are substantially equivalent, they are not dispositive. *Miranda*, 975 F.2d at 1533 (quotation omitted). Finally, a plaintiff does not have to show discriminatory intent to prove her prima facie case. *Id.* (citing *Mitchell v. Jefferson Cty. Bd. of Educ.*, 936 F.2d 539, 547 (11th Cir. 1991)).

The defendants do not dispute that the Board paid the plaintiffs less than they paid Collier, or that the plaintiffs and Collier worked under similar conditions. *See* doc. 34 at 11. Consequently, the only issue in dispute is whether the plaintiffs and Collier performed substantially equal jobs.

The defendants argue that Collier's job was not substantially equal to the plaintiffs' jobs because he had more responsibilities than the plaintiffs, including the twenty-three specific job duties Collier contends he performed without any assistance from the plaintiffs. *Id.* at 12.[2] The plaintiffs refute this contention, and assert that they and Collier were collectively responsible for the day-to-day

---

[2] Collier attests that he was also responsible for salary schedules prior to 1999. Doc. 34-1 at 1. *See also* doc. 37-5 at 3. But, because the plaintiffs started working for the Board in 1999 or later, Collier's duties before 1999 are not relevant to the determination of whether Collier and the plaintiffs had substantially equal jobs.

11

operations of the bookkeeping department, such as payroll, benefits, and accounts payable activities, and that many of their tasks and responsibilities overlapped. Docs. 37 at 5, 23; 37-5 at 6; 37-7 at 3; 37-9 at 3. However, the court must determine whether <u>each</u> of the plaintiffs performed work substantially equal to Collier's job, not whether the plaintiffs collectively performed substantially similar work as Collier, or whether some of their responsibilities overlapped. *See Arrington*, 139 F.3d at 876. In that respect, by their own contentions, none of the three plaintiffs performed all twenty-three duties that Collier claims to have performed. *See* docs. 34-1 at 1-2; 37-5 at 2-3, 6; 37-7 at 4-6; 37-9 at 3-5. Rather, based on the plaintiffs' affidavits and the record before the court, Eckl performed only seven of those twenty-three duties, VanDerVelde performed ten, and West performed sixteen. *See id.* Moreover, the plaintiffs' affidavits do not provide sufficient information about other duties they performed for the court to determine whether, in light of those duties, each of the plaintiffs and Collier performed substantially equal work. *See* docs. 37-5; 37-7; 37-9. As a result, the plaintiffs have not shown that a question of material fact exists with respect to their prima facie claims.

Perhaps to avoid that conclusion, the plaintiffs point out that, just like Collier, they each have a bachelor's degree in a business-related field. *See* doc. 37 at 7-9. That similarity between the plaintiffs and Collier is not sufficient to create

a question of fact with respect to their Equal Pay Act claims because, in determining whether jobs are substantially similar, the court looks to the actual job duties performed, not "the skills and qualifications of the individual employees holding those jobs." *Miranda*, 975 F.2d at 1533 (citing *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1032 (11th Cir. 1985)). Thus, the plaintiffs' arguments related to their qualifications do not save their claims, and the defendants are entitled to summary judgment on the Equal Pay Act claims based on the disparity between the plaintiffs' and Collier's salaries.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the plaintiffs' motion to strike, docs. 36 (Case No. 3:17-cv-00051-AKK; 24 (Case No. 3:17-cv-01232-AKK), is **DENIED**. The defendants' motion for summary judgment, doc. 33 (Case No. 3:17-cv-00051-AKK); doc. 23 (Case No. 3:17-cv-01232-AKK), is **GRANTED IN PART**, and the Equal Pay Act claims based on the pay disparity between the plaintiffs and Collier are **DISMISSED WITH PREJUDICE**. The gender discrimination claims under Title VII and retaliation claims under Title VII and the Equal Pay Act will proceed to a jury trial on **June 24, 2019** at **9:00 a.m.** at the John McKinley Federal Building in Florence, Alabama. The pre-trial conference is **SET** for **May 2, 2019** at **2:00 p.m.** at the federal courthouse in **Huntsville, Alabama**. The court directs

the parties to the Standard Pretrial Procedures governing all pretrial deadlines, which is attached as **Exhibit A**.

**DONE** the 22nd day of March, 2019.

                                                    _____
                                                      **ABDUL K. KALLON**
                                                  UNITED STATES DISTRICT JUDGE

# **EXHIBIT A**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA**

**PRE-TRIAL DOCKET
HON. ABDUL K. KALLON, PRESIDING**

**HUNTSVILLE, ALABAMA**

This case is set for a pre-trial hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure. A conference-type hearing will be held in chambers in the federal courthouse in Huntsville, Alabama at the time indicated.

The hearing will address all matters provided in Rule 16, including the limitation of issues requiring trial, rulings on pleading motions, and settlement possibilities.

Counsel attending the conference are expected to be well-informed about the factual and legal issues of the case, and to have authority to enter appropriate stipulations and participate in settlement discussions. <u>Counsel appearing at the conference will be required to proceed at trial notwithstanding the naming of others as designated trial counsel</u>.

Promptly upon receipt of this notice, plaintiff's counsel is to initiate discussions with other counsel aimed at ascertaining which basic facts are not in dispute, at clarifying the parties' contentions (for example, just what is denied under a "general denial") and at negotiating workable procedures and deadlines for remaining discovery matters. <u>At least four (4) business days in advance of the conference, plaintiff's counsel is to submit to chambers (via email at kallon_chambers@alnd.uscourts.gov) a proposed Pre-trial Order in Word or WordPerfect format</u>, furnishing other counsel with a copy. It is anticipated that in most cases the proposed order, with only minor insertions and changes, could be adopted by the court and signed at the close of the hearing.

A sample of a proposed Pre-trial Order is available on the Chamber web site (http://www.alnd.uscourts.gov/content/judge-abdul-k-kallon) to illustrate the format preferred by the court and also to provide additional guidance and instructions. Each order must, of course, be tailored to fit the circumstances of the individual case.

15

Counsel drafting this proposed order should consider the utility this document will provide for the litigants, the jury, and the court alike. The court anticipates using the pretrial order to (1) identify and narrow the legal and factual issues remaining for trial, and (2) provide jurors with the legal and factual context of the dispute. This order should **not** revisit at length arguments made in previous filings with the court, nor should it serve as another venue for adversarial posturing. Pretrial orders should be simple, short, and informative.

IN ANY CASE WHERE COUNSEL HAVE ANNOUNCED SETTLEMENT TO THE COURT, A CONSENT JUDGMENT IN SATISFACTORY FORM <u>MUST</u> BE PRESENTED TO THE COURT <u>PRIOR</u> TO THE SCHEDULED TRIAL DATE; OTHERWISE, THE CASE WILL BE DISMISSED <u>WITH</u> PREJUDICE.